IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GINA RAMOS,<br><br>               *Plaintiff*,<br><br>v.<br><br>TIMOTHY MCVEY and MARY MCVEY,<br><br>               *Defendants*. | CIVIL ACTION<br>NO. 16-00932 |

**PAPPERT, J.**                                                                                                                    **August 24, 2016**

## MEMORANDUM

       Gina Ramos ("Ramos") and Timothy McVey ("Mr. McVey") were involved in a car accident at the intersection of Callowhill and North 7th Street in Philadelphia on May 16, 2014. Ramos allegedly suffered serious injuries in the crash. She sued the alleged tortfeasor Mr. McVey and his wife, Mary McVey ("Mrs. McVey") (collectively "the McVeys"),[1] to recover for her injuries under Pennsylvania's Motor Vehicle Financial Responsibility Law ("the MVFRL"), 75 Pa. Cons. Stat. Section 1701, *et seq*. Ramos filed a Motion for Partial Summary Judgment to preclude the McVeys from introducing evidence of Ramos's disability benefits.[2] For the following reasons, the Court denies the motion.

### I.

       On or about May 16, 2014, at approximately 6:45 a.m., Ramos was driving a car westbound on Callowhill Street through the intersection with North 7th Street in Philadelphia.

---

[1]     Mrs. McVey owned the car Mr. McVey was driving when the accident occurred. (Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. ("Defs.' Resp.") at 7, ECF No. 11.)

[2]     The motion seeks partial summary judgment, leading the parties to dispute whether it satisfies the criteria and requirements for motions filed under Federal Rule of Civil Procedure 56. The motion is actually an *in limine* filing seeking to preclude from evidence at the upcoming arbitration proceeding Ramos's receipt of disability benefits pursuant to a short term disability policy. The Court assesses it accordingly, without the need for analysis under Rule 56.

1

(Pl.'s Compl. ¶ 6, ECF No. 1, Ex. A; Defs.' Answer ¶ 6, ECF No. 2.)  Mr. McVey was driving Mrs. McVey's car northbound on North 7th Street.  (Pl.'s Compl. ¶ 6; Defs.' Answer ¶ 6.)  The two cars crashed in the middle of the intersection.  (Pl.'s Compl. ¶ 6; Defs.' Answer ¶ 6.)

Ramos's alleged injuries caused her to miss work from May 16 until July 11, 2014.  (Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot.") ¶¶ 1–2, ECF No. 9; Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. ("Defs.' Resp.") ¶¶ 1–2, ECF No. 11.)  When Ramos returned to her job she was "limited to working at reduced hours due to medical restrictions" for seven months.  (Pl.'s Mot. ¶ 2; Defs.' Resp. ¶ 2.)  Ramos was covered under a "short term disability policy," pursuant to which she received partial reimbursement for lost wages as the result of missing work.  (Pl.'s Mot. ¶ 3; Defs.' Resp. ¶ 3.)  Ramos paid the policy's premiums through payroll deductions.  (Pl.'s Mot. ¶ 4; Defs.' Resp. ¶ 4.)

Ramos sued the McVeys in the Philadelphia County Court of Common Pleas on February 2, 2016.  (Pl.'s Compl. ¶ 1.)  Under the MVFRL, Ramos seeks in excess of $50,000 for her alleged injuries, plus interest, costs and attorneys' fees.  (*Id.* ¶ 18.)  The McVeys removed the complaint to this Court on February 26, 2016.  (Defs.' Notice of Removal at 5–6, ECF No. 1.)  Ramos filed her motion on July 25, 2016.  (ECF No. 9.)  The McVeys responded a week later and Ramos replied the next day.  (ECF Nos. 11–12.)  The arbitration hearing is set to take place on September 20, 2016.  (ECF No. 10.)

**II.**

The Pennsylvania General Assembly enacted the MVFRL "'in large part'" to check the rapidly rising cost of automobile insurance.  *Rupert v. Liberty Mut. Ins. Co.*, 291 F.3d 243, 246 (3d Cir. 2002) (quoting *Huber v. Erie Ins. Exch.*, 587 A.2d 333, 334 (Pa. Super. Ct. 1991)).  The underlying aim of the statute however is "'to provide broad coverage to assure the financial

integrity of the policyholder.'" *Id.* (quoting *Danko v. Erie Ins. Exch.*, 630 A.2d 1219, 1222 (Pa. Super. Ct. 1993), *aff'd*, 649 A.2d 935 (Pa. 1994)). As such, "Pennsylvania courts have held that 'the MVFRL is to be construed liberally to afford the greatest possible coverage to injured claimants.'" *Id.* (quoting *Sturkie v. Erie Ins. Group*, 595 A.2d 152, 157–58 (Pa. Super. Ct. 1991)). At the same time, courts are to refrain "from rewriting the MVFRL under the pretext of pursuing its spirit." *Id.* (internal quotation marks and citation omitted); *see also* 1 Pa. Cons. Stat. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."); *Tannenbaum v. Nationwide Ins. Co.*, 992 A.2d 859, 866 (Pa. 2010) ("[I]t is axiomatic that exercises in statutory interpretation must entail close consideration of the express language of the governing statute.").

The MVFRL includes an offset provision that precludes double collection of benefits in certain instances. 75 Pa. Cons. Stat. § 1722; *see also Smith v. Progressive Specialty Ins. Co.*, 15-cv-528, 2016 WL 626754, at *2 (W.D. Pa. Feb. 17, 2016). "'This statutory abrogation of the common law collateral source rule is designed to prevent double recovery by accident victims.'"[3] *Armstrong v. Antique Auto Club of Am.*, 670 F. Supp. 2d 387, 394 (M.D. Pa. 2009) (quoting *O'Malley v. Vilsmeier Auctions Co.*, 986 F. Supp. 306, 308 (E.D. Pa. 1997)). Section 1722 of the MVFRL, entitled "Preclusion of recovering required benefits" states that:

---

[3] Under the collateral source rule, payments from a third party do not diminish the damages otherwise recoverable from the wrongdoer. *See Johnson v. Beane*, 664 A.2d 96, 100 (1995). The victim is entitled to the damages caused by the tortfeasor's negligence regardless of compensation the victim receives from other sources. *See Nigra v. Walsh*, 797 A.2d 353, 356 (Pa. Super. Ct. 2002). The principle underlying the rule is that it is better for the victim to receive a windfall than for the tortfeasor to be relieved of responsibility for the wrong. *See Kagarise v. Shover*, 275 A.2d 855, 856 (Pa. Super. Ct. 1971).

> *In any action for damages against a tortfeasor*, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this *subchapter*, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in *section 1719*.

75 Pa. Cons. Stat. § 1722 (emphasis added). "Subchapter" refers to "Subchapter B. Motor Vehicle Liability Insurance First Party Benefits." 75 Pa. Cons. Stat. §§ 1711–25. Section 1719, entitled "Coordination of benefits" states that:

> (a) General rule.--Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any program, group contract or other arrangement for payment of benefits such as described in section 1711 (relating to required benefits) 1712(1) and (2) (relating to availability of benefits) or 1715 (relating to availability of adequate limits) shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first party benefits provided in section 1711, 1712 or 1715 or workers' compensation.
>
> (b) Definition.--As used in this section the term "program, group contract or other arrangement" includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa.C.S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations).

75 Pa. Cons. Stat. § 1719.

Ramos and the McVeys respectively rely on *Panichelli v. Liberty Mutual Insurance Group*, 669 A.2d 930 (Pa. 1996) and *Tannenbaum v. Nationwide Insurance Company*, 992 A.2d 859, 866 (Pa. 2010) to support their positions. (Pl.'s Mot. at 7–10; Defs.' Resp. at 8–10.) In *Panichelli*, the Supreme Court of Pennsylvania was confronted with an issue of first impression: "whether sick pay and social security benefits received by an insured should be deducted by an insurer in calculating the insured's 'actual loss of gross income' under section 1712(2) of the . . .

4

MVFRL." 669 A.2d at 931. The court held that "the insurer may not make such deductions in calculating the insured's actual loss of gross income." *Id.* Fundamental to the court's holding was that the plaintiff's "receipt of both employer provided sick leave benefits and social security disability benefits, as well as full income loss benefits, does not result in 'double dipping.'" *Id.* at 932. The court noted that these are "benefits for which the employee has paid in the form of lower wages for the sick leave benefits and in the form of payroll deductions for the social security benefits." *Id.* Therefore, in collecting his sick leave pay, the plaintiff "was exhausting his *earned* employee benefit." *Id.* Four years later in *Tannenbaum*, the Supreme Court held that "under Section 1722's plain terms, an insured's recovery under UM/UIM [uninsured and underinsured motorist] policies may be offset by group/program/arrangement benefits, including disability benefits purchased, in whole or in part, by the insured, at least so long as those benefits are not subject to subrogation." *Id.* at 869.

### III.

Neither *Panichelli* nor *Tannenbaum*, however, govern this case. Both were actions against the plaintiff's own insurance company for first party benefits. *See Panichelli*, 669 A.2d at 931 ("Panichelli then filed the instant action against Liberty Mutual seeking the full amount of his monthly salary less than 20% statutory deduction, for a payment amount of $2,186.80."); *Tannenbaum*, 992 A.2d at 861 ("Appellee sought to recover income-loss benefits under the underinsured motorist ("UIM") provisions of an applicable vehicle policy issued by Appellant, Nationwide Insurance Company."). The *Panichelli* court held that "based on the language of § 1719(a), sick pay and social security benefits programs must be construed as providing benefits in excess of, and not in duplication of, the income loss benefits payable under § 1712(2)." 669 A.2d at 932. Section 1722's bar on double recovery did not apply to *Panichelli*'s facts because

5

the action was not "against a tortfeasor, or in any uninsured or underinsured motorist proceeding." 75 Pa. Cons. Stat. § 1722. *Tannenbaum*, like *Panichelli*, was also an action by an injured plaintiff against his own insurance company for first party benefits. *Tannenbaum*, 992 A.2d at 861. However, unlike *Panichelli*, *Tannenbaum* was an "uninsured or underinsured motorist proceeding." *Id.* at 869. Section 1722's bar on double recovery was therefore applicable.

Here, unlike *Panichelli* and *Tannenbaum*, Ramos's action is for damages against a tortfeasor (*see generally* Pl.'s Compl.); Section 1722 expressly applies and Ramos is precluded from double recovery under the statute.[4]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[4] In *Austin v. Dionne*, 909 F. Supp. 271 (E.D. Pa. 1995) our Court reached the same conclusion in an action for damages against a tortfeasor:

> Pennsylvania law prohibits double recovery without exception. Under § 1722 of the Pennsylvania Motor Vehicle Financial Responsibility Law, "in any action for damages against a tortfeasor," a party is precluded from "recovering the amount of benefits paid or payable under . . . any program, group contract or other arrangement for payment of benefits." 75 Pa. Cons. Stat. Ann. § 1722 (1995). As the Third Circuit has recognized, § 1722 reflects the Pennsylvania legislature's goal of preventing double recovery from both an employer's disability insurance fund and a tortfeasor. *See Travitz v. Northeast Dep't ILGWU Health and Welfare Fund*, 13 F.3d 704, 710 (3d Cir. 1994) (finding that plaintiff attempted to circumvent purpose of both § 1722 and disability insurance contract's exclusion clause). Therefore, application of Pennsylvania law in the present case would result in excluding from plaintiffs' wage loss calculations the amounts already recovered from Austin's PNI disability insurance policy.

*Id.* at 275.